IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C.,

          Plaintiffs,

v.

DAZN US LLC,

          Defendant.

C.A. No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH") allege against Defendant DAZN US LLC ("DAZN" or "Defendant") as follows:

### PARTIES

2.     Plaintiff DISH Technologies L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It provides innovation and technology services and products to, among others, the DISH Network® satellite pay-TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay-TV service operated by Sling TV L.L.C.

3.     Plaintiff Sling TV L.L.C. is a limited liability company organized and existing under the laws of the State of Colorado, with its principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV® streaming pay-TV service.

4.     On information and belief, Defendant DAZN US LLC is a limited liability company existing under the laws of the State of Delaware, with its principal place of business at 1 World Trade Center, 72nd Floor, New York 10007, United States. *See* Terms & Conditions, https://www.dazn.com/en-US/help/articles/16391473315101-terms-conditions.

1

On information and belief, DAZN owns and operates an online sports streaming platform through its DAZN Application, DAZN Site, and DAZN Server(s) that enables the distribution of live and on-demand sports content, including video, audio, and other multimedia, to one-time purchasers and paying subscribers. DAZN has appointed UNITED CORPORATE SERVICES, INC., 800 North State Street Suite 304, Dover, DE 19901 (877-734-8300) as its agent for service of process.

## JURISDICTION AND VENUE

5.      DISH asserts a claim for patent infringement against DAZN arising under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over DAZN for at least the following reasons: (1) DAZN is organized under the laws of the State of Delaware; (2) DAZN has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District; (3) DAZN regularly does business or solicits business in this District; (4) DAZN engages in other persistent courses of conduct and derives substantial revenue by offering and providing infringing products and services in this District; and (5) DAZN has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be subject to suit here by its offering of infringing products and services and providing infringing products and services in this District.

7.      Venue is proper in the District of Delaware under 28 U.S.C. § 1400(b) because DAZN is organized under the laws of the State of Delaware. Additionally, on information and belief, DAZN has committed acts of infringement in the State of Delaware, including but not limited to offering products and services that infringe one or more of DISH's asserted patents to customers located in Delaware or for use in Delaware.

**THE ASSERTED PATENTS**

8. On May 21, 2024, the United States Patent and Trademark Office (the "PTO") duly and lawfully issued United States Patent No. 11,991,234 ("'234 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '234 Patent is attached as Exhibit A. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '234 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '234 Patent.

9. On October 21, 2014, the PTO duly and lawfully issued United States Patent No. 8,868,772 ("'772 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '772 Patent is attached as Exhibit B. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '772 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '772 Patent.

10. On June 13, 2023, the PTO duly and lawfully issued United States Patent No. 11,677,798 ("'798 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '798 Patent is attached as Exhibit C. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '798 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '798 Patent.

11. On October 11, 2022, the PTO duly and lawfully issued United States Patent No. 11,470,138 ("'138 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '138 Patent is attached as Exhibit D. Subject to the exclusive license referenced below, all rights, title, and interest in and to the '138 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '138 Patent.

12. On November 5, 2019, the PTO duly and lawfully issued United States Patent No. 10,469,554 ("'554 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming." A true and correct copy of the '554 Patent is attached as Exhibit E. Subject

to the exclusive license referenced below, all rights, title, and interest in and to the '554 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '554 Patent.

13.     The claimed inventions in the '234, '772, '798, '138, and '554 Patents (collectively, the "ABR Patents" or "Asserted Patents") are directed to various novel aspects and improvements to adaptive bitrate streaming ("ABR") technology.  Each of the ABR Patents issued from U.S. Patent Application No. 11/116,783 ("'783 Application") or patent applications that are continuations or continuations-in-part of the '783 Application.

14.     DISH Technologies L.L.C. ("DISH Technologies") has entered an exclusive license with Sling TV L.L.C. ("Sling TV"), granting substantial rights in the Asserted Patents to Sling TV, including the right to sue thereon.  Sling TV's streaming service products, namely the Emmy® Award-winning Sling TV® streaming service, practice the Asserted Patents by, among other things, employing the claimed adaptive bitrate streaming technology to deliver content to end users.

15.     In compliance with 35 U.S.C. § 287(a), or alternatively, to the extent required, in substantial compliance therewith, DISH avers that the marking requirements of 35 U.S.C. § 287(a) do not apply to at least certain claims asserted herein with respect to the '234 Patent and the '772 Patent.  The '772 Patent consists exclusively of method claims, and DISH asserts only method claims of the '234 Patent.  The Federal Circuit has long held that "the notice provisions of § 287 do not apply where the patent is directed to a process or method." *American Medical Systems, Inc. v. Medical Engineering Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). Accordingly, because the '234 and '772 Patents are asserted exclusively through their method claims, the marking statute does not apply, and DISH is entitled to recover damages from the earliest date of infringement without restriction based on any failure to mark.

16.     Alternatively, and without waiving the foregoing, DISH has substantially complied with 35 U.S.C. § 287(a) with respect to the '772, '798, '138, and '554 Patents.  DISH

4

Network has continuously maintained virtual marking at www.dish.com/ip/ since at least the issuance of each of the '772, '798, '138, and '554 Patents, or within a reasonable time thereafter.

17. To the extent 35 U.S.C. § 287(a) applies, DISH Technologies and Sling TV have made, and continue to make, reasonable efforts to ensure that all licensees of the ABR Patents comply with the marking requirements of 35 U.S.C. § 287(a). These efforts include: (a) incorporating contractual provisions in each license agreement that require licensees to mark products practicing the ABR Patents; (b) providing licensees with the specific patent number and marking instructions; and (c) conducting periodic reviews and communications with licensees to monitor and verify their compliance with the marking statute.

## BACKGROUND OF THE DISPUTE

### MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

18. Drew Major founded MOVE Networks, Inc. ("MOVE") in 2003 in American Fork, Utah (initially under the name XLon until 2006). MOVE invented HTTP-based adaptive bitrate streaming to enhance the quality of streamed video content over the Internet and was the original holder of the ABR Patents. The patent application that led to the ABR Patents was filed in the early 2000s, before iPhones and streaming content over the Internet were as widespread as they are today.

19. While at MOVE, inventors David Brueck, Mark Hurst, and Drew Major (collectively, "the ABR Inventors") noticed that the Internet was rapidly becoming a preferred way to distribute live and recorded video to individuals. However, at the time of the ABR Patents' invention, content delivery over the Internet was often unreliable, costly, and of lower quality than cable and satellite TV.

20. The ABR Inventors understood that media streaming had not yet reached its full potential and believed that, through research and development, streaming could match the

quality of cable and satellite content. Before the inventions described in the Asserted Patents, the current technology was inadequate. During playback, earlier streaming methods often struggled to select the video quality or resolution that the network bandwidth and reliability could handle. Most commercial systems, from companies like RealNetworks, Adobe, Microsoft, and Apple, relied on proprietary implementations of public Internet standards (such as RTP/RTSP). These proprietary systems were mutually incompatible, costly to implement, and often required custom server setups and complex routing configurations to bypass Internet firewalls. The ABR Inventors saw these issues as an opportunity and created a better solution.

21. The ABR Patents' specifications detail the need for improved data transport in content streaming. Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously." *See, e.g.*, '772 Patent, Exhibit B, at col. 1, ll. 50–51. Unfortunately for protocols at the time, "[s]treaming offers the advantage of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content." *See, e.g.*, *id.* col. 1, ll. 52–54.

22. To meet these needs, the ABR Inventors developed a novel solution: HTTP-based adaptive bitrate streaming. ABR divides the entire content file into smaller units called "streamlets" at multiple bitrates and delivers them over HTTP/TCP, the protocols used for reliable data transmission over the Internet. The ABR Inventors' method enables content delivery to adapt to available bandwidth at any given moment, ensuring the highest possible quality throughout the stream. With the ABR Inventors' client-side pull approach, the playback device continuously monitors network quality and related factors, adjusting the requested quality of the streamed content accordingly. As a result, MOVE's patented ABR technology now allows Internet users worldwide to stream content in real time at the highest possible quality.

23.    The ABR Patents' specifications explain how the ABR Inventors significantly improved the user viewing experience for streaming content data over a network: "[A] need exists for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network].  Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams." *See, e.g.*, *id.* col. 2, ll. 39–44.

24.    One unconventional but fundamental improvement described in the ABR Patents is the creation of sets of streamlets from the original large content file, where many streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different bitrates.  Continuous independent playback of the streamlets results in the full content being played back.  The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set and, as needed, to choose a different quality of streamlet from the subsequent set to adapt to changing bandwidth resources.

25.    This approach was a significant improvement over prior systems that delivered content as a continuous stream of bits or as a single large file.  As described and claimed in the ABR Patents, when the user's network bandwidth is limited, the client can choose a lower bitrate to maintain playback without buffer interruptions.  This removes the need for users to download the entire content file before starting playback.  Segmenting media into streamlets enables users to retrieve and enjoy content at the best possible bitrate as it is streamed.  It is also well-suited for live streaming.  Furthermore, because each streamlet can be requested and played independently, the technique supports functions such as fast-forward, rewind, and direct seek, which were difficult to implement with earlier streaming technologies.

26.    Another non-routine and revolutionary improvement over previous streaming methods described in the ABR Patents is that the client, instead of the server, controls switching

7

between different bitrates.  The advantages of using an intelligent client to make these decisions and switch between different bitrate streamlets are twofold.  First, the client is better equipped to determine the appropriate streamlet by measuring the network's actual throughput at its point of reception.  Therefore, it is the client that decides which quality and which streamlet to request or pull, based on calculating one or more factors.  These factors may relate to the network's performance and its ability to sustain streaming the video.  Second, shifting decision-making to the client effectively removes the need for a customized or "specialized" video server, thereby improving over the prior art's "push" approach systems.  Unlike the prior art's push systems, the technique described and claimed in the ABR Patents enables a standard web server to host all content's streamlets, requestable by a client using the standard HTTP/TCP protocol the web standard upon which the Internet is built.

27.    Such a system, where a client makes specific requests for streamlets, is now called a "pull" system.  Custom IT configurations that "push" content to clients are unnecessary in such a pull system, as file requests operate on the same "port 80" as all web server requests. Access to segmented content can be scaled exponentially through standardized web caches. Together, these benefits demonstrate major technological advancements and a significant decrease in operating and publishing costs compared to earlier RTP/RTSP-based systems.

28.    The ABR Inventors' improvements to streaming succeeded where others had tried and failed.  The RTP/RTSP-based systems of the late 1990s described above each attempted to create a successful multi-bitrate streaming platform, but none managed to make bitrate switching reliable, and none actually worked over the Internet.

**ABR PATENTS SELL FOR $45 MILLION**

29.    In December 2010, EchoStar Advanced Technologies L.L.C., then a wholly owned subsidiary of EchoStar Corporation, spent $45 million to acquire MOVE and its ABR Patent portfolio. Two of the three ABR Inventors joined as employees. Recognizing the value

of MOVE's ABR technology and customers' growing interest in quality online content delivery, DISH affiliate DISH Digital Holding L.L.C. acquired EchoStar Advanced Technologies L.L.C. in 2012 as part of a joint venture with EchoStar Corporation. EchoStar Advanced Technologies L.L.C. was later renamed DISH Digital L.L.C. and, in 2014, transferred the ABR Patents to EchoStar Technologies L.L.C. (a subsidiary of EchoStar Corporation). In February 2017, EchoStar Technologies L.L.C. became a subsidiary of DISH Network L.L.C., and in February 2018, it was renamed DISH Technologies L.L.C.

30.     DISH and its affiliated companies are a leading provider of satellite TV and Internet streaming services, serving approximately 7.166 million Pay-TV subscribers in the United States as of September 30, 2025.  Since its founding, DISH has invested millions in research and development and in acquiring novel technologies to address long-felt needs across its industry.

31.     In January 2015, DISH launched Sling TV as the first live television streaming service offered by a major pay-TV distributor.  Sling TV delivers live programming from major networks directly over the Internet to consumers on a range of devices, including Amazon Fire TV, Roku, tablets, computers, and smartphones, without requiring a traditional cable or satellite subscription. The ABR technology described and claimed in the Asserted Patents is fundamental to this service. By continuously adapting the quality of streamed content to available network bandwidth in real time, the patented ABR system enables Sling TV to deliver broadcast-quality live television reliably over the public Internet. As DISH's CEO stated at launch, Sling TV was "not only launching a new product category but a new industry." In recognition of this achievement, the National Academy of Television Arts and Sciences (NATAS) awarded Sling TV a Technology & Engineering Emmy® Award in the category of "Pioneering Development of Large Scale, Cloud Served, Broadcast Quality, Linear Channel Transmission."

**MULTIPLE TRIBUNALS HAVE CONFIRMED THE ABR PATENTS' VALIDITY**

32.     DISH has successfully defended its intellectual property rights in the ABR Patents against parties at the International Trade Commission. *See In the Matter of Certain Fitness Devices, Streaming Components Thereof, and Systems Containing Same*, Inv. No. 337-TA-1265 (Int'l Trade Comm'n) (the "ITC Action").

33.     In the ITC Action, the ITC concluded that the respondents' use of the same type of adaptive bitrate streaming technology at issue here infringes U.S. Patent No. 10,469,554 (the '554 Patent asserted herein). *See, e.g.*, Exhibit K (ITC Action, Inv. No. 337-TA-1265 (Commission Opinion (Public Version), (Mar. 23, 2023)), at 2, 4-5, 93 (affirming ALJ's infringement findings as to claims 16, 17, and 20 of the '554 Patent)).

34.     Specifically, the Chief Administrative Law Judge ("Chief ALJ") of the ITC concluded that the ITC Respondents' use of adaptive bitrate streaming pursuant to certain streaming standards, such as HTTP Live Streaming ("HLS") and MPEG-DASH, infringes the '554 Patent. For that reason, among others, DISH prevailed in its infringement claims against Peloton, iFit, and MIRROR in the ITC Action. The online streaming services operated by DAZN through its DAZN Application, DAZN Site, and DAZN Server(s) (collectively, the "Accused Streaming Services") employ substantially similar adaptive bitrate streaming systems and methods.

35.     In addition to finding infringement, the Chief ALJ of the ITC upheld the validity of the '554 Patent over the ITC respondents' arguments that the prior art anticipated or rendered obvious the '554 Patent. *See, e.g.*, Exhibit K (ITC Action, Inv. No. 337-TA-1265 (Commission Opinion (Public Version), (Mar. 23, 2023)), at 57-64 (affirming that the asserted claims are not invalid in view of the prior art)).

36.     Since the ITC Action, several parties have attempted to institute *Inter Partes* Review challenges at the USPTO Patent Trial and Appeal Board ("PTAB") and *Ex Parte*

10

Reexamination challenges at the U.S. Patent and Trademark Office, concerning the validity of the asserted ABR Patents.  The validity of the '234 Patent has been challenged twice at the PTAB. *See, e.g.*, *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00940 (Final Written Decision issued Feb. 2, 2026) (vacated Feb. 3, 2026); *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00941 (institution discretionarily denied Nov. 21, 2024).

37.    The '798 Patent has been challenged four times at the PTAB. *See, e.g.*, *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00043 (Final Written Decision issued April 14, 2025); *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00517 (institution discretionarily denied Aug. 7, 2024); *fuboTV Media, Inc. v. DISH Techs. L.L.C.*, IPR2024-00901 (joined with IPR2024-00043) (Final Written Decision issued April 14, 2025); *WebGroup Czech Republic, A.S. & NKL Assocs., S.R.O. v. DISH Techs.*, IPR2025-00470 (institution discretionarily denied July 16, 2025).

38.    The '138 Patent has also been challenged four times at the PTAB. *See, e.g.*, *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00044 (Final Written Decision issued April 14, 2025); *Aylo Freesites Ltd. v. DISH Techs. L.L.C.*, IPR2024-00512 (institution discretionarily denied Aug. 13, 2025); *fuboTV Media, Inc. v. DISH Techs. L.L.C.*, IPR2024-00902 (joined with IPR2024-00044) (Final Written Decision issued April 14, 2025).

39.    The '554 Patent has also been challenged four times at the PTAB. *See, e.g., Aylo Freesites Ltd. v. DISH Techs. L.L.C.,* IPR2024-00045 (Final Written Decision issued April 14, 2025); *Aylo Freesites Ltd. v. DISH Techs. L.L.C.,* IPR2024-00514 (institution discretionarily denied Aug. 14, 2025); *fuboTV Media, Inc. v. DISH Techs. L.L.C.*, IPR2024-00903 (joined with IPR2024-00045) (Final Written Decision issued April 14, 2025); *WebGroup Czech Republic, A.S. & NKL Assocs., S.R.O. v. DISH Techs.*, IPR2025-00467 (institution discretionarily denied July 16, 2025).

40.     DISH cannot allow an unlicensed entity to continue infringement without consequence, as additional potential licensees may be unwilling to license if DISH does not enforce its patent rights.

## DAZN'S PRODUCTS AND SERVICES INFRINGE THE ABR PATENTS

41.     DAZN has directly infringed and indirectly infringed the ABR Patents.

42.     On information and belief, DAZN is an operator and distributor of video and multimedia content via the Internet through its online sports streaming platform.  DAZN's platform, operating through the DAZN Application, DAZN Site (available at www.dazn.com), and DAZN Server(s), enables DAZN to distribute live and on-demand sports content, including video, audio, and other multimedia, to one-time purchasers and paying subscribers.

43.     DAZN makes, uses, sells, and offers for sale in the United States products and services that infringe the ABR Patents. These infringing products and services include the Accused Streaming Services.

44.     On information and belief, the Accused Streaming Services provide live and on-demand videos according to the HTTP Live Streaming protocol ("HLS") and the limitations covered by the Asserted Patents.  Specifically, the Accused Streaming Services deliver video content to users' client devices using HLS for adaptive bitrate streaming, encoding each video at multiple bitrates as individually requestable segments (streamlets) stored on servers accessible via DAZN's domains, including, without limitation, dcs-ak-livedazn.akamaized.net and other content delivery endpoints.  On information and belief, DAZN directly and indirectly controls the quality of the playback offered by the Accused Streaming Services through mandatory HLS instructions embedded in the DAZN Site's web page, which the end user station must execute to receive streaming content.

45.     On information and belief, DAZN's unauthorized use of DISH's state-of-the-art streaming technology has enabled DAZN to build and operate a large-scale online sports

streaming and video platform that delivers multimedia content to millions of users in the United States and worldwide, generating substantial revenue through paid subscriptions, one-time purchases, and other monetization models. On information and belief, the United States is a significant source of traffic to DAZN's platform, with millions of visits from users in the United States.

**DAZN WAS AWARE OF THE ABR PATENTS BEFORE THIS LAWSUIT**

46. On information and belief, the adaptive streaming technology market is a small, specialized field dominated by a handful of major players, including Apple, Microsoft, Adobe, and DISH. DISH has been a prominent force in this field since its 2010 acquisition and continuing development of MOVE's pioneering patent portfolio. DISH and its affiliates have continuously marked their products that practice the Asserted Patents in compliance with the statutory marking requirement, including through a publicly accessible webpage identifying patents applicable to its products, providing the industry with constructive notice of DISH's ABR portfolio. *See* Intellectual Property, DISH NETWORK, https://www.dish.com/ip/.

47. On information and belief, as an operator of a large-scale video streaming platform that depends on adaptive bitrate streaming as the core mechanism by which it delivers its product and generates revenue, DAZN monitored developments in adaptive bitrate streaming technology, was aware of or had reason to investigate DISH's ABR portfolio, and knew or should have known about the Asserted Patents. Any responsible provider operating at DAZN's scale would have investigated the relevant patent landscape before adopting and deploying this technology.

48. On information and belief, DAZN further had reason to know of DISH's ABR Patents, in light of the publicized ITC Action and Commission Opinion finding infringement of the '554 Patent by other large-scale streaming providers using HLS-based adaptive bitrate streaming, and in light of DISH's enforcement and licensing activity in the streaming industry.

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,991,234

## DIRECT INFRINGEMENT

49.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

50.    On information and belief, DAZN directly infringed, literally or under the doctrine of equivalents, at least claim 12 of the '234 Patent.  For example, independent claim 12 recites:

> A method executable by a client device to output rate-adaptive streams received via at least one transmission control protocol (TCP) connection with at least one server over a network, the method comprising:

> receiving, by the client device, digital content from the at least one server via the at least one TCP connection over the network, wherein multiple different copies of the digital content encoded at different bit rates are stored as individually-requestable portions on the at least one server, wherein each of the individually-requestable portions of a corresponding copy of the digital content is a different portion of the digital content during presentation, wherein the individually-requestable portions across the different copies yield the same portions of the digital content upon presentation, and wherein the receiving comprises:

> requesting by the client device a plurality of sequential individually-requestable portions of one of the copies from the at least one server;

> automatically requesting by the client device from the at least one server subsequent portions of the digital content by requesting for each such portion one of the individually-requestable portions from one of the copies dependent upon successive determinations by the client device to change a requested bit rate to a higher or lower bit rate one of the different copies, the automatically requesting including repeatedly generating a factor indicative of a current ability to receive the digital content at a rate sufficient for presenting the digital content as the digital content is received, wherein the factor relates to a performance of the network; and

> making the successive determinations whether to change the requested bit rate based on the factor to achieve continuous presentation of the digital content using the individually-requestable portions of the highest bit rate one of the copies determined receivable at that time at a rate sufficient for presenting the digital content as the individually-requestable portions of the digital content are received, wherein the making of the successive determinations to change the requested bit rate comprises:

requesting a subsequent individually-requestable portion from a higher bit rate one of the different copies than a currently requested one of the different copies when the at least one factor is greater than a first threshold; and

requesting a subsequent individually-requestable portion from a lower bit rate one of the different copies than the currently requested one of the different copies when the at least one factor is less than a second threshold; and

arranging the individually-requestable portions requested from the at least one server in order of ascending presentation time for output to a presentation device.

51.    The Accused Streaming Services infringed at least claim 12 of the '234 Patent by, among other things, receiving by client devices digital content from DAZN's servers via at least one TCP connection, wherein multiple different copies of the digital content encoded at different bit rates are stored as individually-requestable portions (streamlets) on DAZN's servers, including without limitation at least a 280482 Bandwidth variant (192x108 resolution), a 479032 Bandwidth variant (480x270 resolution), and a 5678503 Bandwidth variant (1280x720 resolution); requesting by the client devices a plurality of sequential individually-requestable portions of one of the copies; automatically requesting by the client devices subsequent portions from higher or lower bit rate copies dependent upon successive determinations to change the requested bit rate, including repeatedly generating a factor indicative of the current ability to receive the digital content relating to network performance, and requesting from a higher bit rate copy when the factor exceeds a first threshold or from a lower bit rate copy when the factor falls below a second threshold; and arranging the individually-requestable portions in order of ascending presentation time for output to a presentation device.  Exhibit F to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.[1]

---

[1] Exhibits F through J (the claim chart exhibits) are based exclusively on publicly available information, and without the benefit of this Court's claim construction.  Accordingly, for this Count and each Count below, DISH reserves the right to supplement, amend, or modify the analysis as warranted based on additional facts, claim construction, or other developments.

52. Upon information and belief, DAZN directly infringed the '234 Patent. Specifically, DAZN directly infringes at least claim 12 by operating, testing, and using the Accused Streaming Services through client devices in the United States, thereby causing the client devices to perform each step of the claimed method. On information and belief, end users of the Accused Streaming Services in the United States also directly infringed the '234 Patent by performing each step of the asserted method claims when they accessed and streamed digital content through the Accused Streaming Services.

53. DAZN's acts of infringement injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY INDUCEMENT

54. DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

55. DAZN is liable for inducing infringement of the '234 Patent under 35 U.S.C. § 271(b). DAZN had actual knowledge of the '234 Patent prior to the filing of this lawsuit and, with specific intent to encourage its end users to perform each step of the patented methods, knowingly induced those end users to directly infringe the '234 Patent. DAZN knew that the acts it induced, namely, the use of the Accused Streaming Services by end users in the United States, constituted infringement of the '234 Patent.

56. Specifically, DAZN actively induced infringement of the '234 Patent by, among other things, designing and deploying the Accused Streaming Services to function through client-side ABR algorithms that practice the claimed methods, providing technical documentation and user-facing instructions including without limitation the help articles available at https://www.dazn.com/en-US/help/articles/16177408401821-DAZN-supported-devices-watch-DAZN-on-tv-mobile-computer-or-consoles and related URLs that direct end users to access and stream content through the Accused Streaming Services, promoting the

Accused Streaming Services to end users, and making the Accused Streaming Services continuously available to end users in the United States, all with the specific intent that those end users would perform each step of at least claim 12 of the '234 Patent.

57.    DAZN's end users, including customers, subscribers, and visitors who access the Accused Streaming Services, directly infringed the '234 Patent by using the Accused Streaming Services to perform each step of the asserted method claims of the '234 Patent in the United States.

58.    For example, DAZN actively induced infringement of the '234 Patent because DAZN had actual knowledge of the '234 Patent, knew that end users accessing the Accused Streaming Services in the United States were performing each step of the asserted method claims, and deliberately encouraged such infringing acts by, among other things, designing the Accused Streaming Services to implement the patented ABR methods, publishing and distributing technical and promotional materials directing end users to use those features, and operating the platform infrastructure that enables end-user infringement.

59.    On information and belief, DAZN had actual knowledge of the '234 Patent. As set forth above, DAZN is an operator of a large-scale video streaming platform that depends on ABR technology as the core mechanism for content delivery and that operates in the same specialized market as DISH and other ABR technology providers.  Given DAZN's scale of operations, its dependence on ABR technology, and its position in the same specialized ABR streaming market as DISH, DAZN had actual knowledge of the '234 Patent prior to the filing of this lawsuit.  On information and belief, DAZN, through its engineers and technical personnel responsible for implementing its HLS-based streaming technology, conducted a review of DISH's streaming portfolio, which includes the '234 Patent, and monitored DISH's litigation activity involving the same, thereby acquiring actual knowledge of the '234 Patent and that its use of the same HLS-based streaming technology constituted infringement.

60.     In the alternative, DAZN was willfully blind to the '234 Patent. On information and belief, DAZN subjectively believed there was a high probability that its ABR streaming practices infringed one or more patents in DISH's publicly disclosed portfolio, yet it took deliberate steps to avoid learning that fact. Specifically, despite operating a large-scale platform that depends on the same HLS-based ABR streaming technology covered by DISH's patents, DAZN deliberately avoided monitoring DISH's enforcement and licensing activity in the streaming industry, and deliberately avoided conducting any patent-risk analysis concerning DISH's ABR portfolio, and all while DAZN knew that DISH actively enforced its ABR patent portfolio against other streaming providers.

61.     On information and belief, despite having actual knowledge of the '234 Patent and knowing that its active encouragement of end users to use the Accused Streaming Services constituted induced infringement of the '234 Patent, or, in the alternative, despite subjectively believing there was a high probability that such encouragement constituted induced infringement and taking deliberate steps to avoid confirming that fact, DAZN nevertheless continued its infringing and inducing conduct without taking any steps to design around the '234 Patent, obtain a license, or cease encouraging end-user infringement.

62.     DAZN's acts of induced infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

63.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

64.     DAZN is liable for contributory infringement of the '234 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell the Accused Streaming Services within the United States.  The Accused Streaming Services constitute a material part of the invention claimed in the '234 Patent because they embody the core adaptive bitrate streaming functionality,

specifically, the client-side selection of video segments encoded at different bitrates based on network performance factors, which is recited in at least claim 12 and without which the patented method cannot be practiced. DAZN knew that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '234 Patent. On information and belief, the specific ABR components of the Accused Streaming Services (including the client-side adaptive bitrate selection logic, the server-side multi-bitrate encoding and segment storage infrastructure, and the HLS manifest delivery system) were specifically configured and deployed by DAZN to perform the patented ABR methods and had no substantial non-infringing use in DAZN's deployed configuration.

65.     DAZN had actual knowledge of the '234 Patent and actual knowledge that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '234 Patent, for the reasons set forth above. In the alternative, DAZN was willfully blind to the '234 Patent as set forth above. Despite such knowledge, DAZN continued to sell and offer to sell the Accused Streaming Services, knowing that its customers would use them to perform each step of the asserted method claims of the '234 Patent.

66.     Specifically, DAZN contributed to infringement of the '234 Patent by selling and offering to sell the Accused Streaming Services to its end users in the United States, knowing that those end users would use the Accused Streaming Services to directly infringe the '234 Patent by performing each step of the asserted method claims. DAZN's end users directly infringed the '234 Patent by using the Accused Streaming Services to perform each step of those method claims.

67.     DAZN's acts of contributory infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

19

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,868,772

### DIRECT INFRINGEMENT

68.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

69.     On information and belief, DAZN directly infringes, literally or under the doctrine of equivalents, at least claim 1 of the '772 Patent.  DISH notes that certain claims of the '772 Patent are currently on appeal before the United States Court of Appeals for the Federal Circuit, following a PTAB decision.  Notwithstanding the PTAB decision, DISH believes in good faith that the Federal Circuit will overturn that decision and that the claims asserted herein are and remain valid and enforceable.  DISH expressly reserves the right to assert all claims of the '772 Patent that are confirmed or restored on appeal and will seek leave to amend the Complaint as appropriate to reflect the outcome of those appellate proceedings.  For example, independent claim 1 recites:

A method for presenting rate-adaptive streams, the method comprising:

streaming by a media player operating on an end user station a video from a set of one or more servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on the set of servers, wherein each of the multiple files yields a different portion of the video on playback, wherein the multiple files across the different copies yield the same portions of the video on playback, each of said files having a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential ones of the files of one of the copies from the set of servers over a plurality of Transmission Control Protocol (TCP) connections based on the time indexes;

automatically requesting by the media player from the set of servers over the plurality of TCP connections subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, said automatically requesting including repeatedly generating a set of one or more factors indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the set of one or more factors relate to the performance of the network; and

making the successive determinations to shift the playback quality based on at least one of the set of factors to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time; and

presenting the video by playing back with the media player on the end user station the requested files in order of ascending playback time

70.    The Accused Streaming Services infringe at least claim 1 of the '772 Patent by, among other things, streaming by a media player operating on an end user station video from DAZN's servers, wherein each of a plurality of different copies of the video encoded at different bit rates is stored as multiple files on DAZN's servers, including without limitation at least a 280482 Bandwidth variant (192x108 resolution), a 479032 Bandwidth variant (480x270 resolution), and a 5678503 Bandwidth variant (1280x720 resolution), each file having a time index; requesting by the media player a plurality of sequential files over a plurality of TCP connections based on the time indexes; automatically requesting by the media player from DAZN's servers subsequent portions from different copies dependent upon successive determinations to shift playback quality, including repeatedly generating factors indicative of the current ability to sustain streaming relating to network performance and making successive determinations to shift playback quality to achieve continuous playback using the highest quality copy determined sustainable; and presenting the video by playing back the requested files in order of ascending playback time.  Exhibit G to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

71.    Upon information and belief, DAZN has directly infringed and continues to directly infringe the '772 Patent. Specifically, DAZN directly infringes at least claim 1 by operating, testing, and using the Accused Streaming Services through media players operating on end user stations in the United States, thereby causing those media players to perform each step of the claimed method. In addition, end users of the Accused Streaming Services in the United States have directly infringed and continue to directly infringe the '772 Patent by

21

performing each step of the asserted method claims when they access and stream digital content through the Accused Streaming Services.

72. DAZN's acts of infringement have injured and continue to injure DISH, and DISH is entitled to recover damages for such past and ongoing infringement.

**INDIRECT INFRINGEMENT BY INDUCEMENT**

73. DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

74. DAZN is and has been liable for inducing infringement of the '772 Patent under 35 U.S.C. § 271(b). DAZN has had actual knowledge of the '772 Patent prior to the filing of this lawsuit and, with specific intent to encourage its end users to perform each step of the patented methods, has knowingly induced and continues to induce those end users to directly infringe the '772 Patent. DAZN knew and knows that the acts it induced and continues to induce, namely, the use of the Accused Streaming Services by end users in the United States, constituted and continue to constitute infringement of the '772 Patent.

75. Specifically, DAZN has actively induced and continues to actively induce infringement of the '772 Patent by, among other things, designing and deploying the Accused Streaming Services to function through client-side ABR algorithms that practice the claimed methods, providing technical documentation and user-facing instructions that direct end users to access and stream content through the Accused Streaming Services, promoting the Accused Streaming Services to end users, and making the Accused Streaming Services continuously available to end users in the United States, all with the specific intent that those end users would perform each step of at least claim 1 of the '772 Patent.

76. DAZN's end users who access the Accused Streaming Services directly infringe the '772 Patent by using the Accused Streaming Services to perform each step of the asserted method claims of the '772 Patent in the United States.

77. On information and belief, DAZN has had and continues to have actual knowledge of the '772 Patent. Given DAZN's scale of operations, its dependence on ABR technology, and its position in the same specialized ABR streaming market as DISH, DAZN had actual knowledge of the '772 Patent prior to the filing of this lawsuit and continues to have such knowledge. On information and belief, DAZN, through its engineers and technical personnel responsible for implementing its HLS-based streaming technology, conducted a review of DISH's streaming portfolio including the '772 Patent, monitored DISH's litigation activity involving the '772 Patent, and/or reviewed DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, which identifies the '772 Patent by number and associates it with DISH's ABR streaming products and services, thereby acquiring actual knowledge of the '772 Patent and that its use of the same HLS-based streaming technology constituted and continues to constitute infringement.

78. In the alternative, DAZN has been and continues to be willfully blind to the '772 Patent. On information and belief, DAZN subjectively believed and continues to believe that there is a high probability that its ABR streaming practices infringe the '772 Patent, yet DAZN has taken and continues to take deliberate actions to avoid learning of that fact. Specifically, despite operating a large-scale platform that depends on the same HLS-based ABR streaming technology covered by DISH's patents, DAZN deliberately avoided reviewing DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, deliberately avoided monitoring DISH's enforcement and licensing activity involving the '772 Patent, and deliberately avoided conducting any patent-risk analysis concerning DISH's ABR portfolio, and all while DAZN knew that DISH actively enforced its ABR patent portfolio against other streaming providers.

79. DAZN's acts of induced infringement have injured and continue to injure DISH, and DISH is entitled to recover damages for such past and ongoing infringement.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

80.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

81.    DAZN is and has been liable for contributory infringement of the '772 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell, and by continuing to sell and offer for sale, the Accused Streaming Services within the United States.  The Accused Streaming Services constitute a material part of the invention claimed in the '772 Patent because they embody the core adaptive bitrate streaming functionality, specifically, the client-side selection of video segments encoded at different bitrates based on network performance factors, which is recited in at least claim 1 and without which the patented method cannot be practiced.  DAZN knew and knows that the Accused Streaming Services were and are especially made or especially adapted for use in infringement of the '772 Patent.  On information and belief, the specific ABR components of the Accused Streaming Services including the client-side adaptive bitrate selection logic, the server-side multi-bitrate encoding and segment storage infrastructure, and the HLS manifest delivery system are specifically configured and deployed by DAZN to perform the patented ABR methods and have no substantial non-infringing use in DAZN's deployed configuration.

82.    DAZN has had and continues to have actual knowledge of the '772 Patent and actual knowledge that the Accused Streaming Services were and are especially made or especially adapted for use in infringement of the '772 Patent, for the reasons set forth above. In the alternative, DAZN has been and continues to be willfully blind to the '772 Patent, as set forth above.  Despite that knowledge, DAZN has continued and continues to sell and offer to sell the Accused Streaming Services, knowing that its end users use them to perform each step of the asserted method claims of the '772 Patent.

83.     Specifically, DAZN has contributed and continues to contribute to infringement of the '772 Patent by selling and offering to sell the Accused Streaming Services to its end users in the United States, knowing that those end users use the Accused Streaming Services to directly infringe the '772 Patent by performing each step of the asserted method claims. DAZN's end users directly infringe the '772 Patent by using the Accused Streaming Services to perform each step of those method claims.

84.     DAZN's acts of contributory infringement have injured and continue to injure DISH, and DISH is entitled to recover damages for such past and ongoing infringement.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 11,677,798

### DIRECT INFRINGEMENT

85.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

86.     On information and belief, DAZN directly infringed, literally or under the doctrine of equivalents, at least claim 22 of the '798 Patent.  For example, independent claim 22 recites:

> A process executable by one or more servers to stream digital content for playback by one or more end user stations, the process comprising:
>
> storing, by the one or more servers, a plurality of streams including a first bit rate stream, a second bit rate stream, and a third bit rate stream, wherein each of the first bit rate stream, the second bit rate stream, and the third bit rate stream comprises a group of streamlets encoded at the same respective one of a plurality of different bit rates, each group comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the digital content;
>
> wherein at least one of the first bit rate stream, the second bit rate stream, and the third bit rate stream is encoded at a bit rate of no less than 600 kbps; and
>
> wherein the first streamlets of each of the first bit rate stream, the second bit rate stream, and the third bit rate stream each has an equal playback duration and each of the first streamlets encodes the same portion of the digital content at a different one of the different bit rates;
>
> receiving at least one streamlet request from a respective one of the one or more end user stations to retrieve a first streamlet storing a first portion of the digital content,

wherein the at least one streamlet request from the respective one of the one or more end user stations includes a request for a currently selected first streamlet from one of the first bit rate stream, the second bit rate stream, and the third bit rate stream based upon a determination by the respective one of the one or more end user stations to select a higher or lower bit rate version of the digital content;

retrieving from the one or more servers the requested first streamlet from the currently selected one of the first bit rate stream, the second bit rate stream, and the third bit rate stream; and

sending the retrieved first streamlet from the currently selected one of the first bit rate stream, the second bit rate stream, and the third bit rate stream to the respective one of the one or more end user stations.

87.     The Accused Streaming Services infringed at least claim 22 of the '798 Patent by, among other things, storing on DAZN's servers (including DAZN Server(s) and content delivery endpoints under DAZN's direction and control) a plurality of streams of the same digital content encoded at different bit rates, including without limitation a first bit rate stream, a second bit rate stream, and a third bit rate stream (such as variants identified in DAZN's HLS Master Playlists at bandwidths including 280482, 479032, and 5678503), each stream comprising a group of streamlets corresponding to portions of the digital content, with at least one stream encoded at a bitrate of no less than 600 kbps (e.g., the 5678503 bandwidth stream encoded at approximately 5,600 kbps); receiving streamlet requests from end user stations to retrieve streamlets from a currently selected one of the streams based on each end user station's determination to select a higher or lower bit rate version; retrieving from DAZN's servers the requested streamlets from the currently selected stream; and sending the retrieved streamlets to the requesting end user stations.  Exhibit H to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

88.     Upon information and belief, DAZN directly infringed the '798 Patent. Specifically, DAZN's employees or agents made, used, sold, and offered for sale the Accused Streaming Services in the United States, and DAZN itself owns and operates the DAZN Server(s) that perform the asserted process claims, thereby directly infringing the '798 Patent.

In addition, on information and belief, DAZN contracts with and directs its CDN and hosting providers to store, retrieve, and transmit the accused streamlets according to DAZN's specifications; those providers perform the claimed server-side steps as DAZN's agents or under DAZN's direction and control, and their acts are attributable to DAZN for purposes of direct infringement.

89.     DAZN's acts of infringement injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY INDUCEMENT

90.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

91.     DAZN is liable for inducing infringement of the '798 Patent under 35 U.S.C. § 271(b).  DAZN had actual knowledge of the '798 Patent prior to the filing of this lawsuit and, with specific intent to encourage its end users and any third-party content delivery network operators acting under its direction and control to operate the Accused Streaming Services in a manner that performs each step of the patented process, knowingly induced those parties to directly infringe the '798 Patent.  DAZN knew that the acts it induced, namely, the operation of the Accused Streaming Services in the United States, constituted infringement of the '798 Patent.

92.     Specifically, DAZN actively induced infringement of the '798 Patent by, among other things, designing and deploying the Accused Streaming Services to function through server-side ABR processes that practice the claimed methods, providing technical documentation and instructions directing end users and CDN operators to host, operate, and access the Accused Streaming Services, promoting the Accused Streaming Services, and making the Accused Streaming Services continuously available in the United States, all with the specific intent that the asserted process claims of the '798 Patent would be performed.

93.     On information and belief, end users of the Accused Streaming Services and any third-party CDN operators acting under DAZN's direction and control directly infringed the '798 Patent by performing each step of the asserted process claims of the '798 Patent in the United States.

94.     For example, DAZN actively induced infringement of the '798 Patent because DAZN had actual knowledge of the '798 Patent, knew that the Accused Streaming Services in the United States were being operated in a manner that performed each step of the asserted process claims, and deliberately encouraged such infringing acts by, among other things, designing and deploying the Accused Streaming Services to implement the patented ABR server-side processes, publishing and distributing technical and promotional materials directing operation of those processes, and operating the platform infrastructure that enables such infringement.

95.     On information and belief, DAZN had actual knowledge of the '798 Patent. Given DAZN's scale of operations, its dependence on ABR technology, and its position in the same specialized ABR streaming market as DISH, DAZN had actual knowledge of the '798 Patent prior to the filing of this lawsuit.  On information and belief, DAZN, through its engineers and technical personnel responsible for implementing its HLS-based streaming technology, conducted a review of DISH's streaming portfolio including the '798 Patent, monitored DISH's litigation activity involving the '798 Patent, and/or reviewed DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, which identifies the '798 Patent by number and associates it with DISH's ABR streaming products and services, thereby acquiring actual knowledge of the '798 Patent and that its use of the same HLS-based streaming technology constituted infringement.

96.     In the alternative, DAZN was willfully blind to the '798 Patent. On information and belief, DAZN subjectively believed that there was a high probability that its ABR

28

streaming practices infringed the '798 Patent, yet DAZN took deliberate actions to avoid learning of that fact. Specifically, despite operating a large-scale platform that depends on the same HLS-based ABR streaming technology covered by DISH's patents, DAZN deliberately avoided reviewing DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, deliberately avoided monitoring DISH's enforcement and licensing activity involving the '798 Patent, and deliberately avoided conducting any patent-risk analysis concerning DISH's ABR portfolio, and all while DAZN knew that DISH actively enforced its ABR patent portfolio against other streaming providers.

97.     On information and belief, despite having actual knowledge of the '798 Patent and knowing that its active encouragement of the operation and use of the Accused Streaming Services constituted induced infringement of the '798 Patent, DAZN nevertheless continued its infringing and inducing conduct without taking any steps to design around the '798 Patent, obtain a license, or cease encouraging such infringement.

98.     DAZN's acts of induced infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

99.     DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

100.     DAZN is liable for contributory infringement of the '798 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell the Accused Streaming Services within the United States. The Accused Streaming Services constitute a material part of the invention claimed in the '798 Patent because they embody the core adaptive bitrate streaming functionality, specifically, the server-side storage and delivery of digital content encoded at multiple bitrates in streamlets responsive to end-user station requests, which is recited in at least claim 22 and without which the patented process cannot be practiced. On information and belief, the specific

ABR components of the Accused Streaming Services including the server-side multi-bitrate encoding and segment storage infrastructure and the HLS manifest delivery system were specifically configured and deployed by DAZN to perform the patented ABR processes and had no substantial non-infringing use in DAZN's deployed configuration.

101. DAZN had actual knowledge of the '798 Patent and actual knowledge that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '798 Patent, for the reasons set forth above. In the alternative, DAZN was willfully blind to the '798 Patent, as set forth above. Despite that knowledge, DAZN continued to sell and offer to sell the Accused Streaming Services, knowing that the operation of the Accused Streaming Services would result in performance of each step of the asserted process claims of the '798 Patent.

102. Specifically, DAZN contributed to infringement of the '798 Patent by selling and offering to sell the Accused Streaming Services in the United States, knowing that the operation of the Accused Streaming Services would result in performance of each step of the asserted process claims of the '798 Patent.

103. DAZN's acts of contributory infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,470,138

### DIRECT INFRINGEMENT

104. DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

105. On information and belief, DAZN directly infringed, literally or under the doctrine of equivalents, at least claims 1 and 8 of the '138 Patent. DISH notes that certain claims of the '138 Patent are currently on appeal before the United States Court of Appeals for the Federal Circuit, following a PTAB decision. Notwithstanding the PTAB decision, DISH

believes in good faith that the Federal Circuit will overturn that decision and that the claims asserted herein are and remain valid and enforceable. DISH expressly reserves the right to assert all claims of the '138 Patent that are confirmed or restored on appeal and will seek leave to amend the Complaint as appropriate to reflect the outcome of those appellate proceedings.

For example, independent claim 1 recites:

> A system for adaptive-rate content streaming of a video that is playable on one or more end user stations over the internet, the system comprising:
>
> at least one storage device storing the video, wherein the video is digitally encoded at a plurality of different bitrates creating a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream, the low quality stream, the medium quality stream, and the high quality stream each comprising a group of streamlets, wherein each streamlet corresponds to a portion of the video, and wherein each streamlet in each group of streamlets is encoded at a respective one of the plurality of different bitrates, and wherein each group of streamlets comprises at least first and second streamlets;
>
> wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and
>
> wherein the first streamlet of each of the groups of streamlets has the same first duration and encodes the same first portion of the video in each of the low quality stream, the medium quality stream, and the high quality stream, and wherein the first streamlet of the low quality stream encodes the same first portion of the video at a lower bitrate than the first streamlet of the high quality stream and the first streamlet of the medium quality stream.

Dependent claim 8 of the '138 Patent further recites:

> The system of claim 1, further comprising:
>
> a first web server configured to: receive at least one streamlet request over one or more internet connections from the one or more end user stations to retrieve the first streamlet storing the first portion of the video, wherein the at least one streamlet request from the one or more end user stations includes a request for a currently selected first streamlet from one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the video; retrieve from the storage device the requested first streamlet from the currently selected one of the low quality stream, the medium quality stream, and the high quality stream; and send the retrieved first streamlet from the currently selected one of the low quality stream, the medium quality stream, and the high quality stream to the requesting one of the end user stations over the one or more network connections.

31

106.    The Accused Streaming Services infringed at least claims 1 and 8 of the '138 Patent by, among other things, comprising a system for adaptive-rate content streaming including at least one storage device storing video digitally encoded at a plurality of different bitrates creating a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream (such as variants identified in DAZN's HLS Master Playlists at bandwidths including 280482, 479032, and 5678503), each comprising groups of streamlets corresponding to portions of the video, with at least one stream encoded at a bitrate of no less than 600 kbps (e.g., the 5678503 Bandwidth variant encoded at approximately 5,600 kbps); aligning streamlets across the streams such that corresponding first streamlets have equal durations and encode the same first portions of the video at different bitrates, with the low quality stream's first streamlet encoding the same portion at a lower bitrate than the high quality and medium quality streams' first streamlets; and comprising a first web server configured to receive streamlet requests from end user stations over internet connections, retrieve the requested streamlets from the currently selected stream, and send the retrieved streamlets to the requesting end user stations.  Exhibit I to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

107.    Upon information and belief, DAZN directly infringed the '138 Patent. Specifically, DAZN's employees or agents made, used, sold, and offered for sale the Accused Streaming Services in the United States, and DAZN itself owns and operates the DAZN Server(s) that comprise the claimed adaptive-rate content streaming system, thereby directly infringing the '138 Patent.  In addition, on information and belief, DAZN contracts with and directs its CDN and hosting providers to store, retrieve, and transmit the accused streamlets according to DAZN's specifications; those providers operate the claimed system as DAZN's agents or under DAZN's direction and control, and their acts are attributable to DAZN for purposes of direct infringement.

108.   DAZN's acts of infringement injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

**INDIRECT INFRINGEMENT BY INDUCEMENT**

109.   DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

110.   DAZN is liable for inducing infringement of the '138 Patent under 35 U.S.C. § 271(b).  DAZN had actual knowledge of the '138 Patent prior to the filing of this lawsuit and, with specific intent to encourage end users and any third-party CDN operators acting under its direction and control to use the claimed system, knowingly induced those parties to directly infringe the '138 Patent.  DAZN knew that the acts it induced, namely, the use of the Accused Streaming Services as the claimed adaptive-rate content streaming system in the United States, constituted infringement of the '138 Patent.

111.   Specifically, DAZN actively induced infringement of the '138 Patent by, among other things, designing and deploying the Accused Streaming Services to constitute the claimed adaptive-rate content streaming system, providing technical documentation and instructions directing end users and CDN operators to use and operate the Accused Streaming Services, promoting the Accused Streaming Services, and making the Accused Streaming Services continuously available in the United States, all with the specific intent that the claimed adaptive-rate content streaming system asserted in the '138 Patent would be used.

112.   On information and belief, end users of the Accused Streaming Services and any third-party CDN operators acting under DAZN's direction and control directly infringed the '138 Patent by operating as or using the claimed adaptive-rate content streaming system in the United States.

113.   For example, DAZN actively induced infringement of the '138 Patent because DAZN had actual knowledge of the '138 Patent, knew that the Accused Streaming Services in

the United States were being used as the claimed adaptive-rate content streaming system, and deliberately encouraged such infringing use by, among other things, designing and deploying the Accused Streaming Services to constitute the claimed system, publishing and distributing technical and promotional materials directing use of those features, and operating the platform infrastructure that enables such infringement.

114.    On information and belief, DAZN had actual knowledge of the '138 Patent. Given DAZN's scale of operations, its dependence on ABR technology, and its position in the same specialized ABR streaming market as DISH, DAZN had actual knowledge of the '138 Patent prior to the filing of this lawsuit.   On information and belief, DAZN, through its engineers and technical personnel responsible for implementing its HLS-based streaming technology, conducted a review of DISH's streaming portfolio including the '138 Patent, monitored DISH's litigation activity involving the '138 Patent, and/or reviewed DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, which identifies the '138 Patent by number and associates it with DISH's ABR streaming products and services, thereby acquiring actual knowledge of the '138 Patent and that its use of the same HLS-based streaming technology constituted infringement.

115.    In the alternative, DAZN was willfully blind to the '138 Patent. On information and belief, DAZN subjectively believed that there was a high probability that its ABR streaming practices infringed the '138 Patent, yet DAZN took deliberate actions to avoid learning of that fact. Specifically, despite operating a large-scale platform that depends on the same HLS-based ABR streaming technology covered by DISH's patents, DAZN deliberately avoided reviewing DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, deliberately avoided monitoring DISH's enforcement and licensing activity involving the '138 Patent, and deliberately avoided conducting any patent-risk analysis

concerning DISH's ABR portfolio, and all while DAZN knew that DISH actively enforced its ABR patent portfolio against other streaming providers.

116. On information and belief, despite having actual knowledge of the '138 Patent and knowing that its active encouragement of use of the claimed system constituted induced infringement of the '138 Patent, DAZN nevertheless continued its infringing and inducing conduct without taking any steps to design around the '138 Patent, obtain a license, or cease encouraging such infringement.

117. DAZN's acts of induced infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

118. DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

119. DAZN is liable for contributory infringement of the '138 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell the Accused Streaming Services within the United States. The Accused Streaming Services constitute a material part of the invention claimed in the '138 Patent because they embody the core adaptive bitrate streaming functionality, specifically, the system of streamlets encoded at multiple bitrates and delivered by a first web server in response to end-user station requests for higher or lower bitrate versions of the video, that is recited in the asserted system claims and without which the claimed system cannot be used to infringe. DAZN knew that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '138 Patent. On information and belief, the specific ABR components of the Accused Streaming Services including the client-side adaptive bitrate selection logic, the server-side multi-bitrate encoding and segment storage infrastructure, and the HLS manifest delivery system were specifically configured and

deployed by DAZN to perform the patented ABR methods and had no substantial non-infringing use in DAZN's deployed configuration.

120.    DAZN had actual knowledge of the '138 Patent and actual knowledge that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '138 Patent, for the reasons set forth above.  In the alternative, DAZN was willfully blind to the '138 Patent, as set forth above.  Despite that knowledge, DAZN continued to sell and offer to sell the Accused Streaming Services, knowing that the Accused Streaming Services would be used as the claimed adaptive-rate content streaming system and thereby directly infringe the '138 Patent.

121.    Specifically, DAZN contributed to infringement of the '138 Patent by selling and offering to sell the Accused Streaming Services in the United States, knowing that the Accused Streaming Services would be used as the claimed adaptive-rate content streaming system and thereby directly infringe the '138 Patent.

122.    DAZN's acts of contributory infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,469,554

### DIRECT INFRINGEMENT

123.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

124.    On information and belief, DAZN directly infringed, literally or under the doctrine of equivalents, at least claim 7 of the '554 Patent.  DISH notes that certain claims of the '554 Patent are currently on appeal before the United States Court of Appeals for the Federal Circuit, following a PTAB decision.  Notwithstanding the PTAB decision, DISH believes in good faith that the Federal Circuit will overturn that decision and that the claims asserted herein are and remain valid and enforceable.  DISH expressly reserves the right to

assert all claims of the '554 Patent that are confirmed or restored on appeal and will seek leave

to amend the Complaint as appropriate to reflect the outcome of those appellate proceedings.

For example, independent claim 1 recites:

> A system for adaptive-rate content streaming of live event video playable on one or more end user stations over the Internet, the system comprising:
>
> at least one storage device storing live event video, the live event video encoded at a plurality of different bitrates creating a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream, the low quality stream, the medium quality stream, and the high quality stream each comprising a group of streamlets encoded at a respective one of the plurality of different bitrates, each group of streamlets comprising at least first and second streamlets, each of the streamlets corresponding to a portion of the live event video;
>
> wherein at least one of the low quality stream, the medium quality stream, and the high quality stream is encoded at a bitrate of no less than 600 kbps; and
>
> wherein the first streamlet of each of the groups of streamlets has the same first duration and encodes the same first portion of the live event video in each of the low quality stream, the medium quality stream, and the high quality stream, and wherein the first streamlet of the low quality stream encodes the same first portion of the live event video at a different bitrate than the first streamlet of the high quality stream and the first streamlet of the medium quality stream.

Dependent claim 7 of the '138 Patent further recites:

> The system of claim 1, further comprising:
>
> a first web server configured to:
>
> receive at least one streamlet request over one or more internet connections from the one or more end user stations to retrieve the first streamlet storing the first portion of the live event video, wherein the at least one streamlet request from the one or more end user stations includes a request for a currently selected first streamlet from one of the low quality stream, the medium quality stream, and the high quality stream based upon a determination by the end user station to select a higher or lower bitrate version of the live event video.
>
> retrieve from the storage device the requested first streamlet from the currently selected one of the low quality stream, the medium quality stream, and the high quality stream; and
>
> send the retrieved first streamlet from the currently selected one of the low quality stream, the medium quality stream, and the high quality stream to the requesting one of the end user stations over the one or more network connections.

125.    The Accused Streaming Services—which DAZN specifically uses to deliver live event video, including without limitation live sporting events distributed via DAZN's "DAZN-linear" channels accessible via dcs-ak-livedazn.akamaized.net—infringed at least claim 7 of the '554 Patent by, among other things, comprising a system for adaptive-rate content streaming of live event video including at least one storage device storing live event video encoded at a plurality of different bitrates creating a plurality of streams including a low quality stream, a medium quality stream, and a high quality stream (such as variants identified in DAZN's HLS Master Playlists, including without limitation an 826045 Bandwidth variant and a 5794355 Bandwidth variant), with at least one stream encoded at a bitrate of no less than 600 kbps (e.g., the 5794355 Bandwidth variant encoded at approximately 5,700 kbps); aligning streamlets across the streams such that corresponding first streamlets have equal durations and encode the same first portion of the live event video at different bitrates; and comprising a first web server configured to receive streamlet requests over internet connections from end user stations to retrieve streamlets from a currently selected stream, retrieve the requested streamlets, and send the retrieved streamlets to the requesting end user stations over the one or more network connections.  Exhibit J to this Complaint is a claim chart with a more detailed infringement analysis of the Accused Streaming Services.

126.    Upon information and belief, DAZN directly infringed the '554 Patent. Specifically, DAZN's employees or agents made, used, sold, and offered for sale the Accused Streaming Services in the United States, and DAZN itself owns and operates the DAZN Server(s) that comprise the claimed system for adaptive-rate content streaming of live event video, thereby directly infringing the '554 Patent.  In addition, on information and belief, DAZN contracts with and directs its CDN and hosting providers to store, retrieve, and transmit the accused streamlets according to DAZN's specifications; those providers operate the

claimed live event video system as DAZN's agents or under DAZN's direction and control, and their acts are attributable to DAZN for purposes of direct infringement.

127. DAZN's acts of infringement injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY INDUCEMENT

128. DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

129. DAZN is liable for inducing infringement of the '554 Patent under 35 U.S.C. § 271(b). DAZN had actual knowledge of the '554 Patent prior to the filing of this lawsuit including, on information and belief, by virtue of the ITC's publicly issued Commission Opinion in the ITC Action finding infringement and validity of the '554 Patent, DISH's enforcement activity in the streaming industry, and DISH's publicly accessible virtual patent marking page at www.dish.com/ip/, which identifies the '554 Patent by number and, with specific intent to encourage end users and any third-party CDN operators acting under its direction and control to use the claimed system, knowingly induced those parties to directly infringe the '554 Patent. DAZN knew that the acts it induced, namely, the use of the Accused Streaming Services as the claimed live event video adaptive-rate content streaming system in the United States, constituted infringement of the '554 Patent.

130. Specifically, DAZN actively induced infringement of the '554 Patent by, among other things, designing and deploying the Accused Streaming Services to constitute the claimed adaptive-rate content streaming system for live event video, providing technical documentation and instructions directing end users and CDN operators to access and operate the Accused Streaming Services for live event streaming, promoting the Accused Streaming Services to end users (particularly for live sports content, which is DAZN's core offering), and making the

Accused Streaming Services continuously available in the United States, all with the specific intent that the claimed system asserted in the '554 Patent would be used.

131.    On information and belief, end users of the Accused Streaming Services and any third-party CDN operators acting under DAZN's direction and control directly infringed the '554 Patent by operating as or using the claimed adaptive-rate content streaming system for live event video in the United States.

132.    On information and belief, despite having actual knowledge of the '554 Patent and knowing that its active encouragement of use of the claimed system constituted induced infringement of the '554 Patent, DAZN nevertheless continued its infringing and inducing conduct without taking any steps to design around the '554 Patent, obtain a license, or cease encouraging such infringement.  In the alternative, DAZN was willfully blind to the '554 Patent, as set forth above with respect to the other Asserted Patents.

133.    DAZN's acts of induced infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

134.    DISH re-alleges and incorporates herein by reference the allegations contained in all prior Paragraphs of this Complaint as if fully set forth herein.

135.    DAZN is liable for contributory infringement of the '554 Patent under 35 U.S.C. § 271(c) by having sold or offered to sell the Accused Streaming Services within the United States. The Accused Streaming Services constitute a material part of the invention claimed in the '554 Patent because they embody the core adaptive bitrate streaming functionality for live event video, specifically, the system of streamlets encoded at multiple bitrates and delivered by a first web server in response to end-user station requests for higher or lower bitrate versions of the live event video, that is recited in at least claim 7 and without which the claimed system cannot be used to infringe.  DAZN knew that the Accused Streaming Services were especially

made or especially adapted for use in infringement of the '554 Patent. On information and belief, the specific ABR components of the Accused Streaming Services including the live event streamlet generation infrastructure, the server-side multi-bitrate encoding and segment storage infrastructure, and the HLS manifest delivery system were specifically configured and deployed by DAZN to perform the patented system for live event video and had no substantial non-infringing use in DAZN's deployed configuration.

136. DAZN had actual knowledge of the '554 Patent and actual knowledge that the Accused Streaming Services were especially made or especially adapted for use in infringement of the '554 Patent, for the reasons set forth above. Despite that knowledge, DAZN continued to sell and offer to sell the Accused Streaming Services, knowing that the Accused Streaming Services would be used as the claimed live event video adaptive-rate content streaming system.

137. Specifically, DAZN contributed to infringement of the '554 Patent by selling and offering to sell the Accused Streaming Services in the United States, knowing that the Accused Streaming Services would be used as the claimed adaptive-rate content streaming system for live event video and thereby directly infringe the '554 Patent.

138. DAZN's acts of contributory infringement have injured and damaged DISH, and DISH is entitled to recover damages for such infringement.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

THEREFORE, DISH respectfully requests that this Court enter:

A.    A judgment in favor of DISH that DAZN has infringed the ABR Patents, directly, jointly, and indirectly by way of inducing and contributing to the infringement of the ABR Patents;

B.    An order of this Court permanently enjoining DAZN and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the '772 Patent;

C.    A judgment and order requiring DAZN to pay DISH its damages, costs, expenses, and pre-judgment and post-judgment interest for DAZN's infringement of the ABR Patents, as provided under 35 U.S.C. § 284;

D.    An accounting of lost sales not presented at trial and an award of additional damages for any such lost sales;

E.    A judgment and order finding this case exceptional under 35 U.S.C. § 285 and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action; and

F.    Such other and further relief to which DISH may show itself to be entitled or as the Court may deem just and proper.

ASHBY & GEDDES

*/s/ John G. Day*

_____
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Kurt Pankratz
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201
(214) 953-6584
kurt.pankratz@bakerbotts.com

Ali Dhanani
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
(713) 229-1234
ali.dhanani@bakerbotts.com

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street, NW
Washington, D.C. 20001
(202) 639-7701
jamie.lynn@bakerbotts.com

Dated:  May 26, 2026